HELANE L. MORRISON (Calif. Bar No. 127752)
JOHN S. YUN (Calif. Bar No. 112260)
MICHAEL S. DICKE (Calif. Bar No. 158187)
CRAIG D. MARTIN (Calif. Bar No. 168195)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 705-2500
Fax: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>KEN C. CHOW, JACK C. LAU, and JOHN C. LIN,<br><br>Defendants. | Civil Action No.<br><br>COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Securities and Exchange Commission (the "Commission") alleges, on information and belief:

## SUMMARY OF THE ACTION

1. This is an insider trading case in which Defendants Ken C. Chow ("Chow"), Jack C. Lau ("Lau"), and John C. Lin ("Lin") purchased securities in nVIDIA Corporation ("nVIDIA" or the "Company") based on confidential information they learned while employed by the Company. Defendants made $238,000, $74,375, and $50,725 in illegal trading profits, respectively.

2. In March 2000, Defendants purchased approximately nVIDIA stock based on their advance knowledge that the Company had just won a lucrative contract with Microsoft

Corporation ("Microsoft"). Within days, the price of nVIDIA stock soared as the market learned of the contract.

3. By trading on material, nonpublic information concerning nVIDIA's contract with Microsoft, Defendants violated Section 10(b) of the Securities Exchange Act ("Exchange Act") of 1934 [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

**AUTHORITY TO BRING THIS ACTION**

4. The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1(c)].

5. Defendants, directly and indirectly, have engaged in transactions, acts, practices and courses of business that constitute violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] promulgated thereunder.

6. Defendants will, unless enjoined, continue to engage in the acts, practices and courses of business alleged herein, or in transactions, acts, practices and courses of business of similar purport and object.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1 and 78aa].

8. Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

9. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants reside and transact business in the Northern District of California.

10. Assignment to the San Jose Division is appropriate pursuant to Civil Local Rule 3-2(c) and (e).

**DEFENDANTS**

11. Chow, age 40, resides in Fremont, California. At all relevant times, Chow was employed by nVIDIA as an engineer at its offices in Santa Clara, California.

12. Lau, age 46, resides in Fremont, California. At all relevant times, Lau was employed by nVIDIA as an engineer at its offices in Santa Clara, California.

13. Lin, age 41, resides in Cupertino, California. At all relevant times, Lin was employed by nVIDIA as an engineer at its offices in Santa Clara, California.

## RELEVANT ENTITY

14. nVIDIA is a Delaware corporation, with its principal place of business in Santa Clara, California, that develops and markets computer graphics components. nVIDIA's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act and is publicly quoted on the Nasdaq National Market.

## DEFENDANTS' ILLEGAL CONDUCT

### Defendants Purchased nVIDIA Stock on March 6, 2000

### After Learning of the Microsoft Contract

15. On Sunday, March 5, 2000, nVIDIA and Microsoft entered into an agreement providing for nVIDIA to design and manufacture the 3D computer graphics and multimedia subsystem for Microsoft's new video game console, the "X-Box." That evening, nVIDIA's president and chief executive officer, Jen-Hsun Huang ("Huang") sent an electronic mail message ("email") to all nVIDIA employees informing them that nVIDIA had won the Microsoft contract. The email, entitled "X is Ours!," stated, among other things:

> Xbox deal is closed! . . . The deal is pretty simple -- we build a custom chip . . . . Microsoft "prepays" us $200M (that's right -- $200,000,000) as their commitment to the program. If Xbox becomes as big as Sony Playstation, we generate about $2B in sales over 5 years.

16. At the time the "X is Ours!" email was distributed, nVIDIA's receipt of the Microsoft contract was confidential, nonpublic information.

17. The following morning, on March 6, 2000 at approximately 9:15 a.m., nVIDIA's vice president of marketing, Dan Vivoli ("Vivoli"), sent all nVIDIA employees an email entitled

"xbox shhhhhh…," reminding them that news of the X-Box contract was confidential. The email stated, in part:

> [Huang] called me a few minutes ago (he is traveling) and asked that I remind everyone to keep the xbox news quiet. Not a word to anyone outside of our walls. Let the news roll out in a controlled way. Microsoft plans to make the news public [March 10] at [an industry conference]. But anything can happen; lets don't jinx it!

18. After they arrived at work at nVIDIA on Monday, March 6, 2000, Defendants read the March 5 email from Huang informing employees of the X-Box contract. In addition, Defendants read the March 6 email from Vivoli reminding nVIDIA employees that information concerning the X-Box contract was confidential.

19. Later in the morning of March 6, 2000, after reading these two emails, Defendants purchased nVIDIA stock through on-line brokerage accounts. Based on the "X is Ours!" email: (a) beginning at approximately 11:31 a.m. that day, Chow spent approximately $247,288 to purchase a total of 4,000 shares of nVIDIA stock; (b) at approximately 10:44 a.m. that day, Lau spent approximately $74,881 to purchase a total of 1,250 shares of nVIDIA stock; (c) at approximately 9:24 a.m. that day, Lin spent approximately $58,769 to purchase a total of 1,000 shares of nVIDIA stock.

**nVIDIA's Stock Price Rose in Response to X-Box Reports**

20. On March 7, 2000, the day after Defendants' stock purchases, nVIDIA stock rose 42.4% to close at $83.31 per share as rumors were reported on the Internet and in the press that nVIDIA had won the X-Box contract. On March 9, 2000, nVIDIA stock rose another 19.4% to close at $100.30 per share.

21. On March 10, 2000, prior to the opening of the stock market, Microsoft publicly announced the award of the X-Box contract to nVIDIA. That day, nVIDIA stock rose another 17.6% to close at $118 per share.

**Defendants' Trades Violated nVIDIA's Policies on Insider Trading and Use of Confidential Information**

22. At all relevant times, nVIDIA had an insider trading policy that prohibited its

employees from trading in nVIDIA securities based on material, nonpublic information concerning the Company and from tipping outsiders with material, nonpublic information. Defendants received nVIDIA's insider trading policy prior to the time they purchased nVIDIA stock on March 6, 2000.

23. By purchasing nVIDIA securities on March 6, 2000 after learning material, nonpublic information concerning the award of the X-Box contract to nVIDIA, Defendants violated the Company's policies on insider trading and use of confidential information.

## CLAIM FOR RELIEF

### (Insider Trading)

Violations of Section 10(b) of the Exchange Act
[15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5]
Promulgated Thereunder

24. Paragraphs 1 through 23 are re-alleged and incorporated herein by reference.

25. Defendants had a fiduciary duty to nVIDIA and its securities holders not to trade in nVIDIA securities, either directly or indirectly, based on material, nonpublic information concerning the Company. Defendants breached that duty when they purchased nVIDIA stock on March 6, 2000 based on material, nonpublic information concerning Microsoft's award of the X-Box contract to nVIDIA.

26. Defendants, with scienter, directly or indirectly:

a) employed devices, schemes, or artifices to defraud;

b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities;

in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, of the mails, or the facilities of a national securities exchange.

27. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

**I.**

Permanently enjoin Defendants and their agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the final judgment of permanent injunction by personal service or otherwise, and each of them, from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder;

**II.**

Enter an Order requiring Defendants to disgorge an amount equal to their illegal trading profits from the securities transactions complained of herein, plus prejudgment interest;

**III.**

Enter an Order requiring Defendants to pay civil penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-l]; and

**IV.**

Grant such other relief as this Court may deem just and appropriate.

DATED: November 16, 2001

Respectfully submitted,

/s/________________________________

Helane L. Morrison
John S. Yun
Michael S. Dicke
Craig D. Martin

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California 94104

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

By /s/________________________________

Helane L. Morrison
John S. Yun
Michael S. Dicke
Craig D. Martin

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California 94104